```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
                v.                       :    MEMORANDUM & ORDER
                                         :    20-CR-293 (WFK)
RICARDO HEPBURN,                         :
                                         :
                    Defendant.           :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**
On September 30, 2022, Ricardo Hepburn ("Defendant") pled guilty to Count Nineteen of a twenty-count Superseding Indictment, charging him with Assault In-Aid-Of Racketeering, in violation of New York Penal Law §§ 120.05(2) and 20.00, in violation of 18 U.S.C. § 1959(a)(3). ECF No. 408. In the plea agreement, Defendant also stipulated to an additional offense, as outlined in Count Sixteen, charging him with Attempted Murder In-Aid-Of Racketeering, in violation of New York Penal Law §§ 125.25(1), 110.00, and 20.00, in violation of 18 U.S.C. § 1959(a)(5). *Id.* The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 135 months of incarceration, two years of supervised release with special conditions, and payment of a $100.00 special assessment.

## DISCUSSION

### I. Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") led the investigation into Defendant and other gang members for the instant offense. Presentence Investigation Report ("PSR") ¶ 4, ECF No. 589. Defendant is a member of the "No Love City" set ("NLC") of the Folk Nation Gangster Disciples ("GD"), a violent street gang, which operates in Brooklyn, New York. *Id.* Central to the GD's tenets is the use of violence to retaliate against perceived slights to the gang or to enhance the status of members within the gang, or both. *Id.*

In November 2020, GD members engaged in four drive-by shootings in retaliation against rival gangs. *Id.* ¶ 6. Defendant participated in two of those shootings on November 9, 2020. *Id.* ¶¶ 18-22. In the early afternoon on that day, a three-car convoy of GD members set out deliberately

1

with two decoy cars and Defendant driving a third car carrying the shooters. *Id.* ¶ 19. In concert with the decoy cars, Defendant drove a stolen BMW to rival gang territory in Brooklyn, where the convoy twice circled past a group of men on a block. *Id.* ¶ 21. After Defendant stopped the BMW, two co-Defendants exited the BMW, walked up the block, and started shooting across the street. *Id.* No one was shot or injured on that occasion. *Id.*

Later that evening on November 9, 2020, Defendant again drove the shooter car in a two-car drive-by convoy. *Id.* ¶ 22. Defendant drove the BMW carrying his co-Defendants to their destination, where one or more of the car's occupants opened fire on a crowd. *Id.* The shooters hit Jane Doe # 2 in the shoulder and grazed her back. *Id.* Defendant then drove the shooters back to their gang's home territory. *Id.*

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment, which alleged Defendant, along with ten co-Defendants, was a member of GD operating in Brooklyn. Superseding Indictment ¶¶ 1, 8, ECF No. 51. According to the Superseding Indictment, GD is an "enterprise" pursuant to 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1). *Id.* ¶¶ 4-5. On August 10, 2021, FBI agents arrested Defendant without incident. PSR ¶ 37. On November 9, 2020, Defendant pled guilty to Count 19 of the Superseding Indictment, charging him with Assault In-Aid-Of Racketeering, in violation of New York Penal Law §§ 120.05(2) and 20.00, in violation of 18 U.S.C. § 1959(a)(3). PSR ¶ 39; Plea Agreement ¶ 1, ECF No. 408. In the plea agreement, Defendant also stipulated to an additional offense, as outlined in Count 16, charging him with Attempted Murder In-Aid-Of Racketeering, in violation of New York Penal Law §§ 125.25(1), 110.00, and 20.00, in violation of 18 U.S.C. § 1959(a)(5). Plea Agreement ¶ 2. Defendant, as part of the plea agreement, agreed not to file an appeal or otherwise challenge, under 28 U.S.C. § 2255 or any other provision, his

conviction or sentence if the Court imposes a term of imprisonment of 168 months or below. *Id.* ¶ 5.

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision, which this Court has done.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 264 (2005). Nevertheless, the Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49. In this regard, the Guidelines provide "the framework for sentencing" and "anchor . . . the district court's discretion." *Molina-Martinez v. United States*, 578 U.S. 189, 198-99 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written

3

statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal reference and quotation marks omitted).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It addresses each in turn.

### III. Analysis

#### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

##### 1. Family and Personal Background

Defendant was born on February 7, 2002 in Manchester, Jamaica. PSR ¶ 82. Defendant never lived with or spoke to his father, who abandoned Defendant and his mother when Defendant was young. *Id.*; *id.* ¶ 85. Defendant's mother, Nichola Edwards, has been the anchor through his challenging childhood and life as a young adult. Defendant Memorandum ("Def. Mem.") at 1, 1 n.2, ECF No.674; *see* PSR ¶ 82. His mother resides in Orlando, Florida, is aware of the instant offense, and remains supportive. PSR ¶ 82. Defendant has an older sister, who also lives in Florida. *Id.* ¶ 83. She too is aware of the instant offense and remains supportive. *Id.*

Defendant described a childhood rife with verbal and physical abuse. *Id.* ¶ 84. Defense counsel explained that one of the reasons Defendant's mother left Jamaica to come to the United States was Defendant's father's physical and verbal abuse. Def. Mem. at 2; *but see* Def. Mem. at 2 n.3 (quoting PSR ¶ 85, which notes that Defendant's mother told Probation she does not know the identity of Defendant's biological father). Defendant's mother was married to Oathneal

4

Smith from approximately 2016 through 2020, during which time he reportedly verbally and physically abused Defendant so frequently that Defendant could not remember how often his stepfather hit him. PSR ¶ 84; *see also id.* ¶ 85. Defendant also reported severe bullying, including physical assault, by his school classmates. *Id.*

After his mother separated from his stepfather in 2020 through Defendant's arrest for the instant offense, Defendant, his mother, and his sister were homeless, living in a Brooklyn homeless shelter or with friends. *Id.* Unless the family was at a homeless shelter, Defendant's mother, sister, and Defendant stayed in different apartments; Defendant's mother is emphatic and asserts that this separation is how Defendant fell in with the wrong crowd. Def. Mem. at 2-3. Since Defendant's instant arrest in August 2021, Defendant's mother and sister have moved to Florida. PSR ¶ 87.

### 2. Educational and Employment History

Defendant reported attending several schools since immigrating to the United States. *Id.* ¶¶ 95-97; Def. Mem. at 5 (representing that, due to expulsions for fighting, Defendant attended five different high schools for an average of four months each). According to Defendant, he attended ninth and tenth grades at Midwood High School in Brooklyn. PSR ¶ 97. He then attended West Brooklyn High School for eleventh grade before he was expelled for fighting with a student. *Id.* ¶ 96. Defendant stated he was placed in special education classes due to his learning disabilities and was relentlessly harassed at school by other students. Def. Mem. at 4, 5. Defendant eventually attended an adult education program at Young Adult Borough Center at George Westinghouse High School in Brooklyn, where he earned his General Equivalency Diploma in 2021. *Id.* at 6; PSR Addendum at 3, ECF No. 677.

After earning his diploma, Defendant worked for several months as a stock clerk at an Amazon warehouse on Staten Island, New York. PSR ¶ 99. In this part-time position, Defendant reported earning $130 per week. *Id.* Defendant quit the job after facing offensive comments from a co-worker. *Id.* Defendant had no other jobs before his arrest on August 10, 2021. *Id.* ¶¶ 99-100. He has instead relied on his mother and family for financial support. *Id.* ¶ 100.

### 3. Prior Convictions

Defendant has one prior felony conviction and numerous arrests. *Id.* ¶¶ 69-80. In 2017, the then-fifteen-year-old Defendant was arrested for Robbery in the First Degree (Class B Felony). *Id.* ¶ 69. While this is an adult offense, Defendant was adjudicated as a youthful offender after his guilty plea, which was entered in 2018. *Id.* Defendant's other arrests relate to alleged activities with other NLC members, including 16 burglaries and robberies of cars from parking garages and an armed home-invasion robbery. *Id.* ¶ 72; Government Memorandum ("Gov't Mem.") at 2, ECF. No. 676. Defendant has two pending cases in state court related to those arrests. PSR ¶¶ 72, 73.

### 4. Medical and Mental Health

Defendant reported he was diagnosed with schizophrenia at a young age. *Id.* ¶ 91. When he was ten, Defendant saw a close friend, unfortunately, stabbed and killed. *Id.* Defendant was subsequently diagnosed with post-traumatic stress disorder (PTSD). *Id.* Defendant also reported having asthma and being symptomatic after contracting COVID-19 in 2022 while in custody at the Hudson County Department of Corrections. *Id.* ¶ 90. Defense counsel noted Defendant's asthma was triggered by his wet cold cell when it flooded with contaminated water, and correctional officers, according to Defense counsel, did not assist Defendant. Def. Mem. at 7.

Defendant states he met with a mental health therapist while in custody awaiting sentencing and he will benefit from additional counseling. PSR ¶ 92. However, defense counsel adds, Defendant remains unmedicated for his schizophrenia diagnosis while in custody despite his desire to receive medication. Def. Mem. at 7. Defendant is at increased risk of psychological damage because, according to defense counsel, Defendant has been in solitary confinement for approximately five months. Def. Mem. at 7.

### 5. Substance Abuse

Defendant reported smoking marijuana daily from age sixteen, but otherwise indicated no history of alcohol abuse or any other drug use. *Id.* ¶ 93. Defendant stated that he had never received drug treatment counseling and is not interested in such counseling. *Id.* ¶ 94.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Section I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved driving fellow gang members to conduct two drive-by shootings. Defendant participated in premeditated efforts to murder individuals in public simply for the sake of the gang's reputation.

7

The bullets fired from the car Defendant drove struck one individual. More could have easily been injured or killed, if not for the poor aim of Defendant's co-Defendants. The law will not tolerate such conduct. The Eastern District of New York is not the Wild West. The Court's sentence will deter Defendant and others from engaging in similar acts and justly punishes Defendant for his offense.

### C.   The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count 19 of the Superseding Indictment, charging him with Assault In-Aid-Of Racketeering, in violation of New York Penal Law §§ 120.05(2) and 20.00, in violation of 18 U.S.C. § 1959(a)(3). In the plea agreement, Defendant also stipulated to an additional offense, as outlined in Count 16, charging him with Attempted Murder In-Aid-Of Racketeering, in violation of New York Penal Law §§ 125.25(1), 110.00, and 20.00, in violation of 18 U.S.C. § 1959(a)(5).

Defendant faces a statutory maximum term of imprisonment of 20 years, which is to say 240 months, pursuant to 18 U.S.C. § 1959(a)(3). Defendant also faces a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Defendant is eligible for not less than one but not more than five years of probation because the instant offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). If a term of probation is imposed, unless extraordinary circumstances exist, a fine, restitution, or community service must be imposed therewith. 18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00 pursuant to 18

U.S.C. § 3571(b). However, the PSR notes Defendant's financial profile indicates he is unable to pay a fine. PSR ¶ 103. The Court is also required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013. Pursuant to 18 U.S.C. § 3663A, restitution in an amount to be determined shall be ordered in this case. Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified, which is the case here. However, the Court may hold an evidentiary hearing within 90 days after sentencing, pursuant to 19 U.S.C. § 3664(d)(5), to determine issues of restitution.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The applicable guideline for the 18 U.S.C. § 1959(a)(3) offense, as outlined in Count 19 of the Superseding Indictment, is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. PSR ¶ 39. The underlying crime in the instant case is attempted murder, so the applicable guideline is U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33. *Id.* In addition, Defendant's guilty plea included stipulating to additional criminal conduct, as outlined in Count 16 of the Superseding Indictment. The Sentencing Guidelines direct that "a plea agreement containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional counts charging those offenses." U.S.S.G. §1B1.2(c). The additional offense requires a multi-count analysis set forth in Chapter Three, Part D of the Sentencing Guidelines. The applicable guideline for the 18

9

U.S.C. § 1959(a)(5) offense, as outlined in Count 16 of the Superseding Indictment, is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. PSR ¶ 39. The underlying crime is also attempted murder, so the applicable guideline remains U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33. *Id.* Both Counts 19 and 16 have offense levels of 33 and, therefore, each are assigned one unit using the multiple count analysis pursuant to U.S.S.G. §§3D1.1, 3D1.4. *Id.* ¶ 60. Added together, these units result in a two-point increase to the total adjusted offense level. *Id.* ¶ 62. Furthermore, Defendant's acceptance of responsibility results in a two-point reduction pursuant to U.S.S.G. §3E1.1(a). *Id.* ¶ 65. All parties agree with this calculation.

The calculations by the U.S. Probation Office ("Probation") initially included an additional one-point reduction pursuant to U.S.S.G. §3E1.1(b) because Probation believed the Government intended to file a motion stating Defendant timely notified the Government of his intention to enter a guilty plea. *Id.* ¶ 66. The Government subsequently stated it did not intend to make such a motion because Defendant pled guilty "after the deadline to receive a third point for acceptance of responsibility set forth in the plea agreement." Gov't Mem. at 4. Therefore, the Government provided only a two-point reduction for acceptance of responsibility in its Guidelines calculations, to which Probation subsequently agreed. *Id.* at 3-4; PSR Addendum at 1-2, ECF No. 677.

While defense counsel disagreed in its sentencing memorandum with Probation and the Government in terms of removing the third point for timely notification of intent to plead guilty, Def. Mem. at 1., defense counsel withdrew the objection at the sentencing hearing. Therefore, Probation, the Government, and defense counsel calculate that these adjustments result in a total

10

adjusted offense level of 33. PSR Addendum at 2; Gov't Mem. at 4. The Court adopts this calculation.

Defendant's prior criminal convictions result in a criminal history score of 1. PSR ¶ 70. Defense counsel and the Government make no objection to the inclusion of Defendant's 2018 conviction for Robbery in the First Degree committed at age fifteen under Defendant's adult convictions. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of 1 establishes a criminal history category of I. *Id.* All parties agree with this calculation.[1]

All parties agree that a total adjusted offense level of 33, combined with a criminal history category of I, results in a recommended Guidelines range of imprisonment of 135 to 168 months. PSR Addendum at 2; Gov't Mem. 4.

Probation recommends the Court impose a sentence of 84 months, consecutive to any potential New York state sentences. Probation Recommendation at 2-3, ECF No. 589-1. Probation recommends that this imprisonment be followed by two years of supervised release with special conditions. *Id.* This is in addition to the mandatory $100.00 special assessment. *Id.* Finally, Probation recommends Defendant be excused from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d) because Defendant poses a low risk of substance abuse. *Id.* Probation bases its recommendation on the following factors: Defendant's role, as a gang member, in violent shootings injuring one individual; Defendant's prior conviction and arrests; Defendant's difficult childhood, including verbal and physical abuse by his stepfather and classmates; Defendant's mental health diagnosis with schizophrenia as well as

---

[1] Although defense counsel agrees with the criminal history calculations, defense counsel states "[Defendant] has no prior criminal convictions." Def. Mem. at 6. However, Probation and the Government state Defendant has one criminal conviction from 2018. PSR ¶ 69; Gov't Mem. at 4.

PTSD resulting from witnessing a close friend stabbed and killed; and the fact that Defendant is awaiting trial on state offenses for conduct not related to the instant offense. *Id.* at 1-3. The Court adopts Probation's recommendation excusing Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

Defense counsel recommends the Court impose a sentence below the Guidelines range. Def. Mem. at 9. Defense counsel bases this recommendation on the following factors: Defendant's traumatic childhood; his "experiences of various forms of violence" from his stepfather and classmates; his "learning disorders and severe psychiatric conditions"; and potential risks associated with deportation. *Id.* at 9-13. Defense counsel writes that Defendant regrets breaking the law and "is prepared to serve time" and "leave prison a better man." *Id.* at 13. Nonetheless, according to defense counsel, Defendant's "profound physical abuse in childhood," "struggles with schizophrenia," and "the relatively limited scope of his criminal behavior strongly mitigate in favor of a lesser sentence." *Id.* at 13.

This Court has read and considered the letters written by Defendant's loved ones, family, and supporters. Ex. A of Def. Mem. at 1-13, ECF No. 674-1. These letters describe Defendant's traumatic upbringing and talk about Defendant as a hard worker, thoughtful friend, caring brother, and loving son. *Id.* The Court appreciates the comments Defendant's advocates have made on his behalf.

The Government recommends the Court impose a sentence within the Guidelines range of 135 to 168 months of imprisonment. Gov't Mem. at 6. The Government bases this recommendation on the following factors: Defendant's "critical role" serving as the driver in two shootings; the need to signal to other gang members and individuals that the law will not tolerate casual gunplay; the fact that defendants with the same offense level and criminal history

category receive on average sentences of 170 months' imprisonment and at the median sentences of 144 months' imprisonment; and the fact that "many people face similar hardships" as Defendant and "the vast majority of them do not engage in . . . crimes as serious as" Defendant's. *Id.* at 4-5. Regarding "the critical need for deterrence and to protect the community," the Government highlights the fact that Defendant's prior conviction for robbery did not deter him from the instant offense, and Defendant, along with a co-Defendant, assaulted another inmate while in custody for the instant offense. *Id.* at 4. The Government argues a Guidelines sentence "accurately balances the seriousness of the defendant's offense and other misconduct with the defendant's history and characteristics," and "will serve to deter other individuals from similarly engaging in such conduct, and avoids unwarranted sentencing disparities." *Id.* at 5.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.     Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation noted "[p]er Policy Statement to USSG §5G1.3, in any case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." PSR ¶ 105. Given Defendant's pending state charges, Probation recommended the Court impose a consecutive sentence "since each offense was a violent crime that harmed unique victims." Probation Recommendation at 2-3, ECF No. 589-1.

### F.     The Need to Avoid Unwarranted Sentence Disparities

13

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.   The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As noted in Section III(C), restitution is mandatory in this case. However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families. PSR ¶ 114. Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### CONCLUSION

In accordance with the analysis above, the Court finds a sentence of 135 months of incarceration consecutive to potential New York state sentences, two years of supervised release with special conditions, and payment of a $100.00 special assessment is appropriate and comports with the dictates of § 3553. The Court finds, moreover, this sentence is consistent

with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 589, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 27, 2024
       Brooklyn, New York

15